We'll call the next matter, which is United States of America versus Manamela. Good morning. Good morning. May I please court Charlotte Newell of Decorate LLP for Appellant Solomon Manamela. I'm just here to introduce Zachary Ewing, who will be arguing on behalf of Appellant. Mr. Ewing just graduated recently from the University of Pennsylvania Law School, will be taking the bar shortly, has been admitted to pursuant to local appellant rule 46.3. Thank you very much. Mr. Ewing. May I please the court. My name is Zach Ewing and I'm here today representing Appellant Solomon Manamela before this court. We respectfully ask this court to reverse the district court's denial of Mr. Manamela's habeas petition and in the alternative to remand this case for an evidentiary hearing and discovery on the issue of trial counsel's deficient performance. Mr. Manamela is entitled to habeas relief for two reasons. First of all, Mr. Manamela was convicted of a crime that by law he did not commit. And secondly, Mr. Manamela's trial counsel had available a meritorious legal argument that would have resulted in the eliminating of six felony counts of health care fraud, but he failed to raise that defense. And as a result, Mr. Manamela was prejudiced by that failure. Obviously just how meritorious that position, that argument was, is a major issue here. I note that in your brief at page 11, you state that that would have been apparent even with a cursory review of the case law. What's that case law? There are two specific cases that I think really point to this conclusion. First of all is U.S. v. Jones, which arose from this court, where the court does go to links to analyze what is a health care benefit program under 24B, which is an element of 1347. A health care benefit program is defined as a plan of contract affecting commerce under which any medical benefit item or service is provided. Under Jones, the criminal defendant was originally charged under 1347. The court found that that charge was misplaced, but in the second Jones for the Third Circuit, the court analyzed whether or not the methadone clinic that the criminal defendant was dealing from was a health care benefit program. You said it's a Third Circuit case, not the District Court case. Yes, Your Honor. In the District Court case, this analysis takes place and it's affirmed by the Third Circuit. In that case, the court, specifically relying on language that occurred and widened the U.S., which is also a Third Circuit case, Third Circuit states that the primary purpose or the focus of 1347 or HIPAA in general, which 1347 is a part of, is to combat waste, fraud, and abuse in health insurance and health care delivery. Okay, great. So it's not just health insurance. That's correct, Your Honor. So let's focus on what happened here. This contract involved facilitating the delivery of health care to families in need. Why is that not a health care program under Section 24? Well, facilitation, or as the contract states, advocacy for community resources does not rise to the level of providing medical care. But it's not advocating like we're encouraging you to see a doctor or family in need. In fact, the contractor is obligated to connect the family with the doctor if they don't have one. Why is that not the provision of a health care benefit as defined under Section 24? For the same reason, Your Honor, as MEBH or SCO provided in general, we're not also providing legal services. In the same provision of the contract where they were charged with a duty to advocate for health services, they were also charged to advocate for legal services when those needs arose or for education services. So I think if advocacy does amount to provision, then by virtue of that, they were also providing legal services or they were providing education services. And it's our position that 1347 requires more than just mere advocacy or more than this tangential relationship that sometimes arises with health care. A health care benefit program by the case law, by Jones and other cases, necessarily involves a plan of contract that either pays for medical care treatment or provides medical care treatment. Those two elements are necessarily involved in every 1347 case that we came across. It's not like there's a litany of cases. That's correct, Your Honor. But up to this point, that has been the case. And we contend that if MEBH's contract or the SCO contract does fall within the purview of 1347, that that does fall far afield from what is available precedent for this court. Because SCO was a service to children in their own homes. This was a broad social service that at times involved medical or health-related advocacy, just as it involved housing advocacy and the like. But it did not involve provision of the service. Are you moving away from the position in your papers that the case law says it's got to be an insurance company has to be involved? Your Honor, I believe in our brief we don't say that that is the limit of... That was my impression, too. You have three people who got that impression. Our position is not that it... You're free to abandon it here if you'd like to. No, Your Honor, our position is not that it must exclusively apply to health insurance. Lucien makes that clear from the Second Circuit, that it can apply to other contexts. That still was an insurance contract. Insurance contracts are certainly paradigmatic of what a health care benefit program is. But I suppose that we can hypothesize of a planner contract that isn't an insurance contract under which a medical care or treatment is either paid for or provided. But that does not change that that was not the case here. Of course, Congress could have explicitly limited it or explicitly indicated statutorily that the 24B definition applies solely to insurance companies, and it didn't say that, right? Well, it's our position that this distinction is made apparent by the statutory context. In the U.S. v. Yates, this term, the Supreme Court said that taking into account the statutory context can reveal the purpose of the statute. And here we have the Health Insurance Portability and Accountability Act. And as this Court stated in both Jones and Lucien... Sorry, not Lucien, Jones and Wyden, this Court stated that the purpose was to combat waste in health insurance and health delivery context. And so it's our position that the context does make this clear. And that combined with the case law that is on point in each of these situations... Is there any case law? In addition to the language or lack thereof in 24B, is there any case law that would support the position that this only applies to insurers? I think Lucien and the Second Circuit does support... Lucien rejected a proposed narrow interpretation of 24B, I understand. Did it say that? Well, I think Lucien is instructive on this point because, as you state, Your Honor, it rejects a narrow interpretation. And so Lucien is instructive because it proposes to state what some of the broad parameters that a health care benefit program could be. Here, the defendant put forward that it only applied to health insurance companies. The government put forward that it did not, that it could apply to this state no-fault insurance company. And so what the Court concluded was here there is a plan of contract and it was providing or paying for medical care or treatment. And so at the outer bounds of 1347, there can be a health care benefit program when you do have a contract that is paying for medical care. Here, there is no such contract. There is no contract that pays for medical care. There is no contract that provides that MEBH had a duty to actually provide medical care. They had a duty, though, to ensure that services were provided to the people that they were, the families that they were contacting, such as their schools and their doctors and their therapists, and they were to work on behalf of those families in ensuring those types of services were provided. So why is this not the type of program that Congress would not want to be abused by false documentation seeking payment for services that were never rendered? This contract seems to require that very type of service to be facilitated, although not necessarily directly provided by the contractor or even the governmental entity that established the program. Congress didn't suggest that it had to be paid for by that entity. There are two reasons why I think the more limited approach is appropriate here. First of all, as stated earlier, to call this providing health care would also indicate that MEBH or school providers were providing legal services or education services, facilitation or advocacy. The whole legal services thing seems a red herring to me. Let's get back. I mean, doesn't the argument, doesn't the position you're taking run the risk of excluding the entire field of medical, social, worker, providers from coverage here? Well, that goes to my second reason, Your Honor, the first being that advocacy is not providing. There is a difference in our opinion or in our position. The second reason is because Manamela is obviously not going free. He is not without consequence. There are statutes in place. He was charged with 12 counts of wire fraud. And so when fraudulent behavior occurs, there are statutes in place. Congress has acted in a way where this behavior is covered and criminal liability does arise. However, health care fraud is an inappropriate statute in this context to cover this activity because there was, again, no providing medical care or treatment, and there was no payment of medical care or treatment. This defense, as stated in our brief, a cursory view of the law would have revealed that the SCO contract fell far afield from any precedent in the statutory context. But counsel failed to raise this defense, and this was unreasonable. This could not have been a strategic decision on counsel's part because, as this court has stated in Thomas v. Varner, a possible strategic justification is difficult to hypothesize when it would result in the dismissal with prejudice of claims against the defendant. So you want us to rule that a lawyer, if given the opportunity, should have looked at Lucien and Gellin and understood this and made the argument? Our position is that, on review of Jones and on review of Lucien and Gellin… What is Jones' applicability here? I'm struggling to understand that because Jones was a theft case, right? It's not a fraud case. Originally, in the precedental case from this court, it was a fraud case, and this court found that the end connection with Prong was not met under 1347. And then Defendant Jones was retried under 669, the theft statute. Jones is instructive because it discusses what a health care benefit program is, and with this court explicitly stating that a health care benefit program existed because payments were being made to the methadone clinic from insurance companies. And so it reveals this court's position on what a health care benefit program is in that it necessarily involves either a plan of contract that provides legal services or pays for legal services. And so because the SCO contract falls afield from this, a review of the case law would have revealed that this was unreasonable Thank you, Your Honor. Thank you very much. We'll have you back for rebuttal, Mr. Ewing. Is it Ms. Witzleben? Witzleben, Your Honor. Witzleben. I should have taken German. I know. It's fine, Your Honor. French has done me absolutely no good. May it please the Court. My name is Bea Witzleben. I'm representing the United States. With me at counsel table is Assistant United States Attorney Monique Gowrie. Your Honor, of course, the SCO program was, in fact, under the legal definition of Section 24B, a health care benefit program. But, of course, that's not the dispositive issue in this matter before the Court today. The dispositive issue or question in this case is whether defense counsel's failure to argue that the SCO program was not a health care benefit program means that the defendant was effectively denied counsel below. The defendant's claim has been that it is so obvious under prevailing law that the SCO program is not a health care benefit program, that his counsel was effectively not acting as counsel and failing to raise that argument. Now, in making this claim, the defendant has an inaccurate perception of the legislative history and a grossly distorted view of the legal landscape that was confronting defense counsel in this case at the time of the trial and even today. The primary basis the defendant has advanced up until today was that Congress wrote a statute that was designed only to protect insurance programs and contracts. He seems to be stepping back a little bit from that today, but let me just say that, of course, if Congress had meant to protect only insurance, it could have and would have said so in the statute. And nothing in the legislative history suggests, much less demonstrates, that they only intended to protect insurance programs and policies. Of course, it would also have made no sense for our Congress to have limited the statute to insurance contracts. Well, it didn't. I mean, that plainly is not present in the statutory language, whatever the legislative history is. That's correct, Your Honor. I do want to note, though, there's lots and lots of health care relationships and transactions that happen. At the time, as noted in the legislative history, for example, the acquisition of medical equipment. One thinks of a hospital buying machines and other equipment that it needs. Could one seriously argue that even though they're not using insurance to do that, they're using their own funds, that that is not health care fraud? That's specifically one of the examples cited in the legislative history about medical equipment. And then even today, lots of people, including many people probably in this room, self-insure for things like dental, vision. We don't all rely on insurance for everything we do. I know somebody in this room actually went recently to urgent care and paid cash, even though he has insurance. So there are people who, would those really seriously not be considered health care fraud? So clearly Congress did not intend to limit this to insurance. How do you respond to the argument that was given to us today that to qualify under Section 24B, there either has to be a provision of medical care by the entity or payment for medical care by the entity? How do you respond to that? Well, Your Honor, first of all, we don't agree with that characterization. And secondly, we believe the defendant was providing medical care. We acknowledge he's not a doctor, he's not a nurse, but he is a social worker. The city didn't just put people off the street and ask them to do this job. They specifically focused on the contract and provisions on trained social workers, certain people with master's level degrees, and so forth. So this is a contract that the city let out for the purposes of providing medical benefits, items, and services to at-risk children. These children needed someone to facilitate, coordinate, and assure their medical care because their families were deficient in this regard, as well as other regards. So this contract is not, and the defendant's brief and argument repeatedly suggest, that this contract tangentially touches on the provision of medical care. That is not true on the contract in this case. And the examples of crutches and yard sales might be very interesting hypotheticals, but they certainly don't reflect what happened in this contract. This was a contract that was bargained for by the city, and express terms were set out and negotiated, in a sense, by the defendant agreeing to take this contract. Those terms required that the SCO providers contact medical personnel to get an assessment of the children's medical needs as soon as the children were assigned to their care. The contract actually specifies that within the first month that the child is assigned to them, they are to contact dental, vision, behavioral health, early intervention practitioners, and obtain medical records, including records for immunizations and visits with primary care physicians and specialists. Then they are required, expressly by the terms of the contract, to assure the provision of appropriate medical, dental, and psychiatric care, including by contacting each doctor at least annually, unless the child's medical needs required more frequent contact, and assuring that the child was actually seeing the physicians, including by calling the doctor's offices to confirm that the children had kept any appointments that had been scheduled. They were also required to obtain and maintain in their files the current medical records for the child, including information about their health insurance, their immunizations, their acute medical conditions, their health diagnoses and hospitalizations, and future medical appointments. This is clearly more than mere advocacy on behalf of the child. This is facilitating... We are looking at terms of art in the statute, I believe, that are medical benefit, item, or service. Isn't that right? Yes, Your Honor. So what are we confronted by here? What is at issue here? A medical benefit, an item, or service? I believe it's all of the above, Your Honor. It's certainly medical services, which can, of course, be provided by a social worker. That happens every day in our health care system. And they are also medical items I would submit in terms of the health records. There's no guidance in the statute on what constitutes an item, but certainly a hard piece of paper that has the child's medical records on it would seem to be an item to me. And it's certainly a medical benefit in the sense of this is, I mean, the defendant essentially concedes in his reply brief that even if they didn't mean just insurance, they might have meant insurance-like things. And this is certainly insurance-like. This is the city indemnifying these children, trying to ensure they don't fall below the line, as tragically occurred in this case when these services were not delivered. So when we parse the statute, what we see is that a reasonable attorney reading the statute would read the definition and see that it's any plan or contract to which any medical benefit, item, or service is provided. Deliberately broad language, as has been discussed and was discussed in the case that we've already made mention of in our briefs. But a defense attorney who's up to snuff would probably then say to himself, well, let me just see, let me look. Did my client have medical benefits, items, and service required? And then he would look at the scope contract and he would see these provisions that are right throughout the contract, which I've tried to outline here briefly for you. He would see that. And at that point, he might or he might not look at the legislative history of the statute because he knows, as the Supreme Court has told us, we look at the plain words, and if they're not ambiguous, we don't look further. But if he looked at the legislative history, he would certainly find no guidance to suggest to him that only insurance companies are covered. And he would, in that case, perhaps look at case law. And as this Court has already noted, what would he find in the case law? Well, he would find nothing directly on point with this. And he would certainly find nothing that told him that this cannot be, as a matter of law, a health care benefit program. And such a counsel, by the way, the fact that he's perhaps not as creative as the lawyer who gets the case after him in reading and parsing and coming up with those things, that does not make counsel constitutionally ineffective under Strickland. The law is very clear in this area that defense counsel are simply not required and cannot be required to recognize and raise every conceivable claim, even if that claim is subsequently found by the Supreme Court of the United States to be meritorious. And we've briefed those cases, that precedent, in our brief. So, Your Honor, I would submit that what we're to make of this case is that defense counsel in this case did the job he was required to do under our Constitution. He chose to use his finite resources of time to create a defense that he thought might get his client acquitted, not only of these health care fraud counts, but all of the substantive counts in the indictment. And there's nothing ineffective about that, and this defendant was not denied his constitutional right. We have to remember that the great writ, the writ of habeas corpus, is an extraordinary remedy. It has very noble purposes, which I believe in very heartily. We do need to make sure that defendants who are put in prison are not there, that their liberty has not been taken from them in violation of their constitutional rights. But the habeas process is not just the next phase in a criminal case. It is an extraordinary remedy, and it is to be reserved for cases in which there has been a denial of constitutional rights. And on the record in this case, it's just not possible to say that this defense attorney, in failing to read the statute the way a clever subsequent lawyer might read it, has been ineffective under the Constitution of the United States. I do want to note briefly while I have a minute that we also believe that even if this wasn't a health care benefit program, which we believe clearly it was, but even if it wasn't, that would not make his counsel ineffective. And even if his counsel is deemed ineffective for not having raised it, we do not believe the defendant has suffered cognizable prejudice under Section 2255 either. And we've briefed that in our documents, his allegations of his prejudice, we believe are not sufficient restraint on liberty to be cognizable under the statute. I don't know if the court has further questions, but. Thank you. Thank you very much, Ms. Fitzsimmons. Mr. Ewing, rebuttal. Thank you, Your Honor. From the SCO contract, MEBH was charged with providing comprehensive family-based services. There are five aspects of this, and the argument that MEBH was either providing or paying for medical care or treatment comes from the fifth aspect of the comprehensive family-based services, which points out illustrations of some of the required components or illustrations of advocacy, which include housing, food, clothing, education and special education, vocational counseling and training, vocational rehabilitation, health, mental health, drug and alcohol, legal employment, child care, and homemaker. This is the provision of the contract that gives rise to the assumption that they were fulfilling the elements of Section 1347. But to say that they were providing or paying for medical care or treatment by merely giving advocacy is much more in line with the second element of the statute, which is to be in connection with the delivery of health care benefits, items or services. And the government seems to conflate those two elements, that if something is in connection with the delivery of health care benefits, items or services, then it must also be a medical benefit, item or service. But our position is that advocacy for health care, just as advocacy for legal services or education services as provided by the contract. If the intention of the service here is to ensure some other or subsequent delivery of health care services or monitoring as well, how can that not be in connection with? In connection with is inherently a pretty broad term. In connection with is certainly a broad term. And the government, I mean, sorry, the statute does use broad language. However, there is a difference between the in connection with prong, in connection with the delivery of health care items or benefits, with the definition of what a health care benefit program is, which is explicitly medical items, services or benefits. Your definition would exclude a broad range of providers and medical professionals from the purview of 1347, wouldn't it? Your Honor, we believe that it would not because medical professionals or those that are providing medical treatment or care were involved in the provision of medical treatment or care. What's mental health advocacy? In the first set of litany of things that you read, you said mental health advocacy. What is that? Your Honor, I see I'm out of time. No, you have time. Okay, thank you. Mental health advocacy would be, in the context of the SCO providers, would be as they were charged to walk into the home of the family to see that either a parent or child is in need of mental health care and then to take the steps necessary to ensure either that they are connected with a mental health provider or encouraging the family or the parents to ensure that that mental health care is. And because they're merely a facilitator, your view is they don't come within 1347? Yes, that's correct, Your Honor. That facilitation or advocacy does not rise to the level of providing health care. Thank you. Thank you, Your Honor. Thank you very much, Mr. Ewing. We appreciate your advocacy on behalf of the petitioner here. We appreciate the arguments of both of counsel. I apologize for bungling your name, Ms. Witzleben. I think actually, although I know virtually no German, I think leben means life in German, doesn't it? That's right. I'm told witz means happy or joking. Ah. Well, that's not something that we generally do in habeas cases, I realize. My parents always told us it meant happy life, but someone who actually speaks German told me it really means more like a joke of life. Thanks very much, counsel. We'll take the case under advisement.